IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JORGE RODAS SALGUERO,<br><br>　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:14-CR-473 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Jorge Rodas Salguero's Motion to Suppress.

Defendant argues that the police lacked probable cause to arrest him and that the fruits of his

detention, including statements made by him and information related to his identity, should be

suppressed.  For the reasons discussed below, the Court will deny Defendant's Motion.

I.  BACKGROUND

On August 26, 2014, Detective Kresdon Bennett, an officer with the Unified Police

Department, was involved in the investigation of a drug trafficking organization.  Another

officer, Sergeant Rapela, advised Detective Bennett that he had two juveniles in custody for

distribution of a controlled substance who wanted to provide information about their supplier.

These two juveniles provided specific information about their supplier and then placed an order

for methamphetamine and heroin.  The supplier indicated that he would be arriving in the area of

7400 South and 300 East in Midvale, Utah and that he would be in a gold or cream colored SUV.

This was the same area that the supplier had previously provided narcotics to the cooperating

individuals.  Detective Bennett set up surveillance in this area.

1

When a vehicle entered the area under surveillance, the cooperating individuals positively identified the driver as their supplier.  The vehicle pulled into a driveway at approximately 7390 South and 245 East.  "The vehicle pulled into the driveway as [if] it was arriving home, like a typical person would if they owned the house or [were] renting the house."[1]  Detective Bennett made contact with the driver and arrested him for the possession of heroin and methamphetamine.  This individual was subsequently booked into the Salt Lake County Adult Detention Center.

As Detective Bennett was booking the driver into jail, a neighbor approached Sergeant Rapela to report multiple vehicles and multiple persons coming and going from the residence where the arrest was made.  Another neighbor called Detective Bennett to report similar information, including the presence of a maroon colored car at the residence.  Based on the arrest of the driver and the complaints from these two neighbors, Detective Bennett suspected that the house was being used to distribute narcotics.  Specifically, Detective Bennett believed that the house was being used as a "stash house," a location where narcotics are packaged.

The officers continued to monitor the home for approximately ninety minutes.  While conducting this surveillance, the officers observed several people, including Defendant, leave the residence and enter the maroon vehicle described by the second neighbor.  Officers followed the maroon vehicle after it left the residence.  Detective Bennett ran a license plate check on the vehicle, which revealed a lack of insurance.  Additionally, the driver failed to signal as he made a right-hand turn.  Detective Bennett conducted a stop of the vehicle.

---

[1] Docket No. 17, at 8–9.

Detective Bennett approached the vehicle and asked the occupants for their names and identification.  None of the occupants had any identification.  Since none of the individuals had identification and concerned that they may have weapons, Detective Bennett removed the occupants from the vehicle and secured them in handcuffs.

Defendant identified himself as Anthony Jose Duvon.  Defendant advised Sergeant Rapela that he was from Honduras and was in the United States illegally.  At that time, officers could not confirm Defendant's identity.  All of the occupants of the vehicle were arrested on suspicion of drug trafficking and transported to Immigration and Customs Enforcement ("ICE") for further identification.  It was determined at ICE that the Defendant provided a false name.

Around this same time, officers conducted a trash cover at the residence, where they discovered materials consistent with drug trafficking.  Officers also obtained a search warrant for the home.  Execution of the search warrant revealed narcotics and other packaging materials consistent with a stash house.

## II.  DISCUSSION

Defendant challenges his arrest, arguing that officers lacked probable cause.  Defendant does not challenge the authority of the officers to conduct the initial traffic stop that lead to his arrest.  In his Reply, Defendant concedes that reasonable suspicion supported the initial stop.  Despite this concession, the Court finds it helpful to first consider whether officers had reasonable suspicion to conduct the traffic stop and whether Defendant's continued detention after the initial stop was justified.  Ignoring the initial stop fails to put the entire encounter between Defendant and law enforcement into proper perspective.

A.      INITIAL TRAFFIC STOP

"A traffic stop is a seizure within the meaning of the Fourth Amendment."[2]  The Court

analyzes such stops under the principles set out in *Terry v. Ohio*.[3]  "To determine the

reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the

officer's action was justified at its inception,' and second 'whether it was reasonably related in

scope to the circumstances which justified the interference in the first place.'"[4]

"It is well settled that an investigative stop is justified where police officers have a

reasonable, articulable suspicion that the detainee has been, is, or is about to be engaged in

criminal activity."[5]  "The presence of reasonable suspicion is not determined by any one factor,

but by the totality of the circumstances."[6]

> Reasonable suspicion is a less demanding standard than probable cause not only
> in the sense that reasonable suspicion can be established with information that is
> different in quantity or content than that required to establish probable cause, but
> also in the sense that reasonable suspicion can arise from information that is less
> reliable than that required to show probable cause.[7]

"Thus, as long as [the officer] has a particularized and objective basis for suspecting an

individual may be involved in criminal activity, he may initiate an investigatory detention even if

it is more likely than not that the individual is not involved in any illegality."[8]

---

[2] *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995).

[3] *Id.* (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

[4] *Id.* (quoting *Terry*, 392 U.S. at 20).

[5] *United States v. Elkins*, 70 F.3d 81, 83 (10th Cir. 1995).

[6] *Id.* (quotation marks and citations omitted).

[7] *United States v. Tuter*, 240 F.3d 1292, 1296 n.2 (10th Cir. 2001).

[8] *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004).

Considering the totality of the circumstances, the Court finds that the officers had reasonable suspicion to conduct a stop of the vehicle in which Defendant was a passenger. As set forth above, two cooperating individuals provided specific information about an individual who supplied them with narcotics. These individuals placed an order with their supplier and positively identified him when he entered the designated meeting area. Officers observed this supplier enter a driveway in a fashion that indicated he was familiar with the house, as if he owned or rented the residence. The supplier was then arrested and the officers located distribution quantities of narcotics.

The officers then received information from two different neighbors concerning ongoing foot and vehicle traffic to and from the house. Additionally, one of the neighbors identified a maroon vehicle that was located at the house. From all of this information, the officers came to believe that the residence was being used for distribution activities.

The officers conducted surveillance on the house and observed several individuals, including Defendant, leave the house and enter the maroon vehicle one of the neighbors had identified. Detective Bennett determined that the vehicle lacked insurance and observed the driver of the vehicle commit a traffic violation. At this point, Detective Bennett effectuated a stop of the vehicle. Based upon all of these circumstances, the Court finds that there was sufficient reasonable suspicion for officers to stop the vehicle.

B.      CONTINUED DETENTION

The Court next considers whether the continued detention of Defendant after the initial traffic stop comports with the Fourth Amendment. "Generally, an investigative detention must

'last no longer than is necessary to effectuate the purpose of the stop.'"[9]  "Under ordinary

circumstances, this limits the officer to a request for the driver's license and registration, a

computer check on the car and driver, an inquiry about the driver's travel plans, and the issuance

of a citation."[10]  "But the officer may delay the driver for further investigation if the officer has

an objectively reasonable, articulable suspicion of some illegal activity beyond the traffic

violation."[11]

      Under the totality of the circumstances presented here, the Court finds that Defendant's

continued detention until his identity and immigration status could be verified by ICE agents was

reasonable.  When the maroon vehicle was pulled over, none of the occupants, including

Defendant had any identification.  Though Defendant identified himself as Anthony Jose Duvon,

the officers were not able to confirm his identity at that time.  Additionally, Defendant disclosed

to Sergeant Rapela that he was from Honduras and was in the United States illegally.  The Tenth

Circuit has held that in certain circumstances, continued detention is reasonable in order to

complete an immigration check, even if the reason for the initial detention has been completed.[12]

In this case, the officers had reasonable suspicion that Defendant might be in the country

illegally based on his statement to Sergeant Rapela.  Based upon this information, the Court finds

that it was reasonable for the officers to continue to detain Defendant until his identity and

---

[9] *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

[10] *United States v. Cervine*, 347 F.3d 865, 871 (10th Cir. 2003).

[11] *United States v. Vazquez*, 555 F.3d 923, 929 (10th Cir. 2009).

[12] *See United States v. Soto-Cervantes*, 138 F.3d 1319, 1323–24 (10th Cir. 1998).

immigration status could be confirmed by ICE.  Once it was determined that Defendant provided

a false name and that he was in the United States illegally, officers could continue to detain him.

In his Reply, Defendant contends that Detective Bennett did not learn of his immigration

status until after he was placed under arrest.  Therefore, Defendant argues, this information could

not have been part of the calculus to detain Defendant.  A close reading of Detective Bennett's

testimony, however, reveals that this information was supplied to Detective Bennett during the

initial detention of Defendant as a result of the traffic stop.

Detective Bennett testified that, after determining that none of the occupants of the

maroon vehicle had identification and out of a safety concern, the occupants were removed from

the vehicle and secured in handcuffs.  Detective Bennett did not testify that any of the occupants

were under arrest at this time.  Rather, they were secured while the investigation was ongoing.

Detective Bennett was then informed by Sergeant Rapela that Defendant stated he was from

Honduras and was in the United States illegally.  This "occurred during the traffic stop and the

detention of Mr. Rodas."[13]  It was at this point that Defendant was secured on suspicion of drug

trafficking and transported to ICE for identification purposes.

Based upon the above, the Court finds that Defendant's continued detention did not

violate the Fourth Amendment.  As a result, the Court need not consider Defendant's argument

concerning that officers lacked probable cause to arrest Defendant for drug trafficking or any

other offense.

---

[13] Docket No. 17, at 22.

## III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 9) is DENIED.  It is further

ORDERED that the time from the filing of the Motion to the date of this Order is excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D), (H).

The Court will set this matter for a scheduling conference to set a new trial date.

DATED this 21st day of January, 2015.

BY THE COURT:

Ted Stewart
United States District Judge

8